UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LISA BURGER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 393 RWS |
| | ) | |
| ALLIED PROPERTY AND CASUALTY | ) | |
| INSURANCE CO. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Allied Property and Casualty Insurance Company ("Allied")'s Motion for Summary Judgment in this insurance coverage dispute. Plaintiff Lisa Burger opposes this motion and the issues are fully briefed. For the reasons set forth below, I will grant Allied's motion for summary judgment.

## Background

On December 3, 2012, Lisa Burger was injured in a car accident caused by the driver of another car, Sandra Shandy. After the accident, Burger made a claim against Shandy for her injuries. Her claim was settled for $100,000, the limit of Shandy's insurance policy. Because Burger claims her injuries exceed $100,000, she sought additional coverage under an "underinsured motorist" provision in her own insurance policy, issued by Allied. Allied refused to pay.

On January 20, 2014, Burger filed suit against Allied in the Circuit Court of the City of St. Louis, Missouri, seeking payment of her UIM benefits under the Allied policy and damages for vexatious refusal pursuant to Mo. Rev. Stat. §375.420. On March 3, 2014, Allied removed this case to this Court based on diversity jurisdiction.

Allied now seeks summary judgment, arguing that the vehicle driven by Shandy is not an "underinsured motor vehicle" as defined by the policy, and therefore Burger is not entitled to recovery. Burger argues that the language of the policy, when read as a whole, is ambiguous as to the meaning of "underinsured motorist coverage" and must be construed against the insurer for a finding that she is entitled to UIM coverage.

## Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## Discussion

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012). Missouri law governs this insurance contract. Under Missouri law, the interpretation

of the meaning of an insurance policy is a question of law. Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 547 (8th Cir. 2003). There is no statute in Missouri that requires drivers to purchase UIM coverage. Lynch v. Shelter Mut. Ins. Co., 325 S.W.3d 531, 539 (Mo. Ct. App. 2010). Accordingly, the limits of UIM coverage are determined by the insurance contract. Id.

The general rules for interpretation of contracts apply to insurance policies. Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 301–02 (Mo. 1993) (en banc). When "construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009). Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole. Id. If the policy language is unambiguous, it must be enforced as written. Id. But if the language is ambiguous, courts should construe the policy in favor of the insured. Id. The fact that the parties disagree over the policy's interpretation does not render a term ambiguous. O'Rourke v. Esurance Ins. Co., 325 S.W.3d 395, 398 (Mo. Ct. App. 2010). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Seeck v. Geico General Ins. Co., 212 S.W.3d, 129, 132 (Mo. banc. 2007). If an insurance clause "appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous." Id. at 134. However, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007).

A.  <u>The Policy</u>

The relevant portions of the Allied policy are as follows:

**1. UNDERINSURED MOTORISTS COVERAGE**

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

\* \* \*

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

\* \* \*

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles shown in the Declarations; or
4. Vehicles involved in the accident. A vehicle and attached "trailer" are considered one vehicle. Therefore, the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer."

\* \* \*

E. Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

#[15], Ex. A, Endorsement AA 0311 (02-12).

\* \* \*

**DECLARATIONS**

**COVERAGE AND LIMITS OF LIABILITY (in Dollars)**

Coverage is provided where a premium or limit of liability is shown for coverage.

UNDERINS. MOTORIST (PER POLICY)

EACH PERSON 50,000 EACH ACCIDENT 100,000

[#15], Ex. A, Declarations, p. 1. A premium is shown for this coverage.

B. <u>Analysis</u>

There is no genuine issue of material fact in dispute. Rather, the parties' dispute is whether the term "underinsured motor vehicle" as used in the policy is ambiguous.

Based on the plain language of the Allied Insuring Agreement, UIM coverage is only available where the tortfeasor's bodily injury liability limit is *less than* Burger's UIM limit. Here, because Shandy's bodily injury liability limit of $100,000 is *greater than* Burger's $50,000 UIM limit, it appears that Shandy is not the driver of an "underinsured motor vehicle" as defined by the Allied policy.

Burger acknowledges that the policy's definition of "underinsured motor vehicle" is clear when read in isolation, but argues that other provisions of the policy, namely, the Limit of Liability provision, the Declarations page, and the Other Insurance provision, inject ambiguity into the meaning of "underinsured motor vehicle." Burger cites to several Missouri cases for support. See <u>Seeck v. Geico General Ins. Co.</u>, 212 S.W.3d, 129 (Mo.banc. 2007); <u>Miller v. Ho</u>

Kun Yun, 400 S.W.3d 779 (Mo. App. W.D. 2013); Fanning v. Progressive Nw. Ins. Co., 412 S.W.3d 360 (Mo. App. W.D. 2013); Jones v. Mid-Century Ins. Co., 287 S.W.3d 687 (Mo. 2009); and Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132 (Mo. 2009).

Allied argues that the policy is unambiguous and Shandy is not an underinsured motorist under the terms of the policy. Allied analogizes this case to Rodriguez v. General Accident Insurance Company, 808 S.W.2d 379 (Mo.banc 1991), Owners Ins. Co. v. Hughes, 712 F.3d 392, 396 (8th Cir. 2013), and Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp.3d 943 (E.D. Mo. 2014), each of which held that similar UIM provisions were unambiguous.

The Supreme Court of Missouri addressed a nearly identical issue and insurance policy in Rodriguez v. General Accident Insurance Company, 808 S.W.2d 379 (Mo.banc 1991). In Rodriguez, the insured was injured in car accident caused by a negligent tortfeasor. Id. at 380. The tortfeasor's insurance policy had a bodily injury liability limit of $50,000. Id. The insured's own UIM coverage was also limited to $50,000. Id. The underinsured motorist coverage provision at issue in Rodriguez used the same language as is used in the Allied policy, except that the Allied policy uses the word "compensatory" before the word "damages" in the Insuring Agreement. See id. at 381 and Exhibit A, Endorsement AA 0311 (02-12). The definition of "underinsured motor vehicle" in the Rodriguez case is identical to the one in the Allied policy. See id. at 381 and Exhibit A, Endorsement AA 0311 (02-12). After reviewing the policy, the Rodriguez court denied coverage to the insured, holding that the policy was "neither ambiguous nor misleading." Id. at 382-83. Additionally, because the tortfeasor's bodily injury limit of $50,000 was not "less than" the insured's $50,000 UIM limit, the court held that the vehicle driven by the tortfeasor was not an "underinsured motor vehicle" as defined by the policy. Id. After holding that "there was no underinsurance," the Rodriguez court fortified its decision,

6

noting that "[a] set-off provision in the Rodriguezes' policy reinforces [the policy's] definition of 'underinsured motorist.'" Id. at 382.

In Owners Insurance Co. v. Hughes, 712 F.3d 392, 396 (8th Cir. 2013), the United States Court of Appeals for the Eighth Circuit considered the meaning of a UIM provision in a policy that was "substantively identical" to the Rodriguez policy. As is the case here, the insured in Hughes argued that, "the fact that a definition is clear and unambiguous does not end the inquiry as to the existence of an ambiguity until the court has reviewed the 'whole policy' to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder." Id. at 396 (citing Miller v. Ho Kun Yun, 400 S.W.3d 779, 786 (Mo. App. W.D. 2013). The Hughes court agreed that, "of course, if other policy provisions inject ambiguity into the meaning of what is a covered 'underinsured motor vehicle,' then Rodriguez would not compel a finding of no coverage." Id. at 396. However, basing its decision in large part on the similarity of its policy to the one in Rodriguez, the Hughes court also found that the policy's definition of "underinsured automobile" was unambiguous and the insured was not entitled to UIM benefits. Id. Additionally, the court explained, finding ambiguity in the *meaning* of what is covered is different from finding potential ambiguities in the description of the *amount* of underinsured coverage. Id. at 395.

In Miller v. Ho Kun Yun, 400 S.W.3d 779 (Mo. App. W.D. 2013), the Missouri Court of Appeals refused to enforce a policy's definition of "underinsured motor vehicle" because, when the insuring agreement, declarations page, and the definition of "underinsured motor vehicle" were considered together, there was "ambiguity in the policy as a whole about the nature of the coverage." Id. at 787–93. Burger argues that this case is more like Miller than Rodriguez and Hughes because the same provisions of the Allied policy (the Insuring Agreement, Declarations

7

page, and the definition of "underinsured motor vehicle") are ambiguous when taken together. However, as the Eighth Circuit pointed out in Hughes, "the Miller court relied on a lack of evidence in the record as to whether the defined policy term 'underinsured motor vehicle' was presented in bold type [in the insuring agreement] so as to notify the ordinary reader of its technical meaning." Hughes, 712 F.3d at 396 (citing Miller, 400 S.W.3d at 781 n. 1); see also Miller, 400 S.W.3d at 792 ("When terms are *clearly* bolded, and the insured is *clearly* informed about the significance of bolding, the courts will recognize and enforce the definition specified.") (emphasis in original). In comparison, the Allied policy defines "underinsured motor vehicle" in the Insuring Agreement, and the term "underinsured motor vehicle" is set apart from the undefined terms through the clear use of quotation marks. This same format was found to unambiguous in Rodriguez. Rodriguez, 808 S.W.2d at 381. Thus, the Allied policy does not suffer from the same ambiguities found in the Miller case. Furthermore, as the Hughes court also points out, "to the extent that Miller conflicts with Rodriguez, [I am] bound to follow Rodriguez, an on-point decision of the state supreme court, rather than Miller, the decision of a state court of appeals." Hughes, 712 F.3d at 396 (citing Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1068 (8th Cir.1995).

Burger also cites to Fanning v. Progressive Nw. Ins. Co., 412 S.W.3d 360 (Mo. App. W.D. 2013) to support the argument that the Allied policy is ambiguous. In Fanning, the court refused to enforce a definition of "underinsured motor vehicle" for two separate reasons. First, the court held that the policy was "ambiguous as a result of a conflict between the policy definition of 'underinsured motor vehicle,' the policy definition of 'declarations page,' and the language the actually appears on the declarations page." Id. at 365. Noting that the policy defined "declarations page" as "the document showing your coverages, limits of liability,

8

covered motorcycles, premium, and other policy-related information," the court stated that, pursuant to the definition, the "declarations page must include 'coverages' and 'limits of liability.'" Id. Because the declarations page did not include the limiting language that was promised in the definition of "declarations page," the court held that this rendered the policy ambiguous. Id. at 366. In contrast, such an ambiguity is not present in this case because the Allied policy does not define "declarations page." "While Fanning supports the established practice of considering a policy's declarations page when analyzing an insurance contract, it does not stand for the proposition that a policy's declarations page must notify an insured of limitations or exclusions to UIM coverage absent such a requirement by the policy itself." Naeger v. Farmers Ins. Co., 436 S.W.3d 654, 660 (Mo. App. E.D. 2014); see also Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp.3d 943, 956 (E.D. Mo. 2014). Indeed, the Missouri Supreme Court has recognized that "essential terms are usually stated in abbreviated form on a declarations page." Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo.2007) (emphasis added). There is nothing about the words used on Allied's declarations page that would lead an ordinary person of average understanding to believe that the declarations page contains anything more than an "abbreviated form" of the policy's "essential terms." Id. Furthermore, the reverse of the declarations page reveals to the insured that there is more to the policy than the Declarations page when it lists the "Endorsements forming a part of this policy," which include the Underinsured Motorists Coverage Endorsement. See #[15], Ex. A, Declarations p. 2. As a result, the declarations page does not conflict with or inject ambiguity into the Allied policy's meaning of "underinsured motor vehicle."

Fanning also held that the policy's set-off provision created an ambiguity because, under the set-off provision, the insurer would never have to pay up to its policy limits. Id. at 367-69.

9

The set-off provision in Fanning allowed for the limit of liability stated in the declarations to be reduced by amounts paid by the underlying tortfeasor.[1] Burger argues that the Allied policy contains a similar set-off provision, and that it creates an ambiguity because, under the set-off provision, Allied will never be required to pay the policy limits of UIM coverage. Burger finds this language in Section E of the Limit of Liability provision:

> E. Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

Burger's argument fails for two reasons. First, as Allied correctly points out, there is no "set-off" provision in its policy. While the set-off provisions in Fanning and Miller reduced *the insurer's limits of liability* by the amount of payments made by responsible persons, the Allied policy only reduces *the insured's total damages* by the amount of payments made by responsible persons.[2] Thus, Burger's argument that Allied would never have to pay up to its policy limits is incorrect.[3] Furthermore, even if it were true that Allied would never have to pay the policy limit,

---

[1] For example, if the limit of liability stated in the declarations is $50,000, and the tortfeasor has paid $25,000, the insurer would reduce its $50,000 payment of benefits by $25,000, the amount paid by the tortfeasor, and would only owe $25,000 in UIM benefits.

[2] For example, if an insured with a UIM limit of $100,000 receives $50,000 from the underlying tortfeasor but sustains $200,000 in damages, the insured may recover the entire $100,000 limit of the UIM coverage because the $50,000 is credited against the damage sustained and not the limit of the UIM coverage. If the same insured suffered only $120,000 in damages, the "amount otherwise payable," i.e., the insured's damages would be reduced by the $50,000 received from the tortfeasor and the insured would receive $70,000 from the UIM carrier. See Allied's Reply Brief, #[21] at 12, FN3.

[3] For this same reason, Burger's attempt to analogize this case to Jones v. Mid-Century Ins. Co., 287 S.W.3d 687 (Mo. 2009) and Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132 (Mo. 2009), which also dealt with set-off provisions that reduced the *insurers' limits of liability*, is unsuccessful. In addition, Jones and Ritchie can be distinguished because in those cases, it was undisputed that the definition of underinsured motor vehicle was satisfied and that some level of UIM coverage applied, which depended on the effect of the set-off provision. Here, as in Rodriguez and Hughes, Allied does not rely on such a set-off provision to deny coverage; rather, it contends there is no UIM coverage because the definition of "underinsured motor vehicle" is

the argument that such a result creates an ambiguity has been rejected in both Hughes, 712 F.3d 392 (8th Cir. 2013) and Jaudes v. Progressive Preferred Insurance Company, 11 F.Supp.3d 943, 958-59 (E.D.Mo. 2014).

Burger also argues that the "Other Insurance" provision of the Allied policy contains a "promise to pay" that, when viewed in the context of the policy as a whole, creates an ambiguity. The "Other Insurance" clause provides:

> **OTHER INSURANCE**
> If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:
> 1. Any recovery for damages under this coverage may equal but not exceed the highest applicable underinsured motorists coverage limit under this policy or other underinsured motorists coverage providing coverage on either a primary or excess basis.
> 2. This policy provides primary underinsured motorists coverage where "your covered auto" is involved. Where this policy provides underinsured motorists coverages on a primary basis, we will pay only our share of the loss. Our share is the proportion that our limit of liability as stated in the Declarations bears to the total of all applicable underinsured motorists coverage under other policies that apply on a primary basis.
> 3. Any underinsured motorists coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance providing coverage on a primary basis and will apply only in the amount that our limit of liability as stated in the Declarations exceeds the sum of the applicable limits of liability of all other applicable underinsured motorists coverage limits that have been paid.

#[15], Ex. A, IN 1362 (02-12), p. 1. Burger argues that the Other Insurance clause's promise to pay a proportional share of the limits of coverage contradicts the policy's definition of "underinsured motor vehicle" and the "set-off clause guarantee that Allied will never be required to pay the stated limits of underinsured motorist coverage." See Burger's Memorandum in Opposition [#20] at 18. However, as discussed above, the Allied policy does not contain such a

---

not satisfied. See also Jaudes v. Progressive Preferred Insurance Company,11 F.Supp.3d 943, 959 (E.D. Mo. 2014).

set-off provision. Furthermore, unlike the case in Seeck v. GEICO Ins. Co., the Other Insurance provision is not even implicated here because there is no "other applicable underinsured motorists coverage." 212 S.W.3d 129, 132 (Mo. banc 2007); see also Jaudes, 11 F.Supp.3d at 954. Additionally, even if the clause were implicated, the language of the Other Insurance clause in the Allied policy clearly states that, in certain situations, the coverage is excess over "other collectible underinsured motorist coverage providing coverage on a primary basis." As a result, the Other Insurance clause does not inject ambiguity into the otherwise clear definition of "underinsured motor vehicle" in the Allied policy.

## Conclusion

When an insurance policy is unambiguous, the Court must enforce the language of the policy as written. Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009). Reading the policy as a whole, the Allied policy's definition of "underinsured motor vehicle" is unambiguous. Because Shandy's liability insurance bodily injury limit is not "less than" $50,000, as required by the clear language of the policy, the Allied policy does not cover Burger's UIM claim as a matter of law. As a result, I will grant Allied's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Allied Property and Casualty Company's Motion for Summary Judgment #[14] is **GRANTED**.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____<br>
RODNEY W. SIPPEL<br>
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2015.